Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>RECURRIDA<br><br>V.<br><br>ERICA MARIE ERICKSON<br><br>PETICIONARIA | TA2026CE00672 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. L1CR202400166-0228<br><br>Sobre: Ley 154 Art. 3(a) Menos Grave |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

# **SENTENCIA**

En San Juan, Puerto Rico, a 26 de junio de 2026.

**I.**

El 26 de mayo de 2026, la señora Erica Marie Erickson (peticionaria o señora Erickson) presentó un recurso de *Certiorari Penal* en el que nos solicitó que revocáramos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario), el 24 de abril de 2026, notificada y archivada en autos el 27 de abril de 2026.[1] Mediante esta, declaró No Ha Lugar la *Moción de Arresto del Fallo* presentada por la peticionaria.

Dentro del término reglamentario para exponer su posición, el 4 de junio de 2026, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General (recurrido), presentó un *Escrito en Cumplimiento de Orden* en el que nos suplicó que deneguemos la expedición del recurso o, en la alternativa, confirmemos la *Resolución* recurrida.[2]

---

[1] Véase entrada núm. 2 del apéndice de la entrada núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[2] Íd., entrada núm. 3 del expediente digital del caso.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y pormenorizamos los hechos pertinentes a la controversia que nos ocupa.

**II.**

Del expediente ante nuestra consideración, surge que, el Ministerio Público presentó sesenta y tres (63) denuncias en contra de la señora Erickson, por infracciones de naturaleza menos graves al Art. 3(a) de la *Ley para el Bienestar y la Protección de los Animales*, Ley Núm. 154-2008, según enmendada, 5 LPRA sec. 1666, y otras infracciones de naturaleza grave.[3] El 20 de marzo de 2026, el TPI encontró culpable a la peticionaria en los sesenta y tres (63) cargos mencionados.

Inconforme, el 24 de marzo de 2026, la peticionaria presentó una *Moción de Arresto del Fallo*.[4] En apretada síntesis, alegó que las denuncias no imputaban delito y que el término "cuidado mínimo" al que se refiere el Art. 3(a) de la Ley Núm. 154-2008, *supra*, es vago e inconstitucional por violar el principio de legalidad. Adujo que las denuncias no establecían cuál era el deber a realizar o el omitido por la peticionaria.

El 24 de abril de 2026, el TPI denegó mediante *Resolución* la moción de arresto del fallo.[5]

Oportunamente, la peticionaria acudió ante esta *curia* mediante el recurso de *certiorari* de epígrafe en el que formuló los siguientes señalamientos de error:

A. **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR "NO HA LUGAR" LA MOCIÓN EN ARRESTO DEL FALLO, A PESAR DE QUE LAS DENUNCIAS NO IMPUTAN HECHOS CONSTITUTIVOS DE DELITO CONFORME A LA REGLA 64(A) DE PROCEDIMIENTO CRIMINAL, YA QUE DESCRIBEN ÚNICAMENTE OBSERVACIONES MOMENTÁNEAS QUE NO DEMUESTRAN UNA PRIVACIÓN SOSTENIDA DE "CUIDADO SUFICIENTE" SEGÚN EXIGE EL ART. 3(A)**

---

[3] Véase entrada núm. 1 del apéndice de la entrada núm. 1 en el SUMAC-TA.
[4] Íd., entrada núm. 3 del apéndice de la entrada núm. 1.
[5] Íd., entrada núm. 2 del apéndice de la entrada núm. 1.

**DE LA LEY 154-2008, NI EXCLUYEN CIRCUNSTANCIAS FUERA DEL CONTROL RAZONABLE DE LA PETICIONARIA.**

**B. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LAS DENUNCIAS CUMPLÍAN CON LAS EXIGENCIAS DE ESPECIFICIDAD REQUERIDAS POR LAS REGLAS 35(C) Y 64 DE PROCEDIMIENTO CRIMINAL Y EL DEBIDO PROCESO DE LEY, AUN CUANDO LAS ALEGACIONES NO DESCRIBEN HECHOS CONCRETOS QUE DEMUESTREN INCUMPLIMIENTO CRIMINAL BAJO EL CONTROL RAZONABLE DE LA PETICIONARIA.**

**C. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EL ART. 3(A) DE LA LEY 154-2008 NO ES VAGO, SIN CONSIDERAR QUE EL CONCEPTO DE "CUIDADO MÍNIMO" DEPENDE DE APRECIACIONES SUBJETIVAS Y PERMITE INTERPRETACIONES ARBITRARIAS E INCONSISTENTES ENTRE DISTINTOS EVALUADORES.**

**D. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO RECONOCER QUE LA APLICACIÓN DEL TÉRMINO "CUIDADO MÍNIMO" EN ESTE CASO ES INCONSTITUCIONAL POR VAGUEDAD Y AMPLITUD EXCESIVA, DEBIDO A QUE LA LEY 154-2008 NO ESTABLECE PARÁMETROS OBJETIVOS SOBRE ALIMENTACIÓN, LIMPIEZA, CALIDAD DEL CUIDADO O CONDICIONES ADECUADAS PARA ANIMALES RESCATADOS Y ENFERMOS.**

**E. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL BASAR SU DETERMINACIÓN EN RAZONAMIENTOS CONCLUSORIOS Y EN OBSERVACIONES AISLADAS REALIZADAS DURANTE UN ALLANAMIENTO A LAS 5:00 A.M., INSUFICIENTES PARA DEMOSTRAR NEGLIGENCIA CRIMINAL SOSTENIDA O JUSTIFICAR RESPONSABILIDAD PENAL CONFORME AL DEBIDO PROCESO DE LEY.**

Es su contención que, el TPI erró al concluir que el delito imputado satisface las exigencias constitucionales del principio de legalidad y la doctrina de vaguedad. Adujo que, al no establecerse parámetros objetivos y claros sobre qué constituye el "cuidado mínimo", el Art. 3 de la Ley Núm. 154-2008, *supra*, no provee aviso adecuado de la conducta penalizada y permite su aplicación arbitraria. Por lo anterior, suplicó que declaremos inconstitucional el mencionado artículo por vaguedad y, en consecuencia, ordenemos el arresto del fallo y la desestimación de los cargos imputados en su contra.

Por su parte, el Pueblo de Puerto Rico presentó un *Escrito en Cumplimiento de Orden*. Arguyó que las denuncias imputan delito y satisfacen las exigencias de especificidad de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II. Por lo que, sostuvo que la determinación recurrida es conforme a derecho.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Rivera et. al. v. Arcos Dorados et al.***, 212 DPR 194, 207 (2023); ***Caribbean Orthopedics v. Medshape et al.***, 207 DPR 994, 1004 (2021); ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, supra, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 338 (2012).

En el ámbito judicial, la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. ***Torres González v. Zaragoza Meléndez***, 211 DPR 821, 847 (2023); ***Mun. Caguas v. JRO Construction***, 201 DPR 703, 712 (2019).

Esta discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. ***Torres González v. Zaragoza Meléndez***, supra, pág. 848. Así pues, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del

Reglamento del Tribunal de Apelaciones, según enmendada, ***In re Aprob. Enmdas. Reglamento TA***, 2025 TSPR 141, pág. 63, 216 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[6]

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". ***Rodríguez v. Pérez***, 161 DPR 637, 651 (2004). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". ***Citibank et al. v. ACBI et al.***, 200 DPR 724, 735 (2018); ***García López y otro v. E.L.A.***, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". ***800 Ponce de Leon. v. AIG***, 205 DPR 163, 174 (2020); ***Citibank et al. v. ACBI et al.***, *supra*; ***Medina Nazario v. McNeil Healthcare LLC***, *supra*, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". ***Hietel v. PRTC***, 182 DPR 451, 459 (2011); ***Pueblo v. Rivera Santiago***, 176 DPR 559, 580 (2009); ***Negrón v. Srio. de***

---

[6] Esta Regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*Justicia*, 154 DPR 79, 91 (2001). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.*, *supra*, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". *Citibank et al. v. ACBI et al.*, *supra*, pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).

**B.**

La *Ley para el Bienestar y la Protección de los Animales*, Ley Núm. 154-2008, 5 LPRA sec. 1660 *et seq.*, exige unos deberes de cuidado mínimo para con las mascotas. El referido estatuto define el "cuidado mínimo" de la siguiente manera:

> (f) "Cuidado mínimo" significa el cuidado suficiente para preservar la salud y bienestar de un animal, exceptuando emergencias o circunstancias más allá del control razonable del guardián. Incluye, pero no se limita a, los requerimientos a continuación:
>
> i. Cantidad y calidad de alimento suficiente para permitir el crecimiento o mantenimiento de peso corporal normal para el animal.
>
> ii. Acceso abierto o adecuado a agua potable, de temperatura apta para tomar en cantidad suficiente para satisfacer las necesidades del animal.
>
> iii. Acceso a un establo, casa o cualquier otra estructura que pueda proteger al animal de las inclemencias del tiempo, y que tenga un lugar apropiado para dormir que lo proteja del frío, calor excesivo y la humedad.
>
> iv. Proveer el cuidado veterinario que una persona prudente estime necesario para proteger al animal de sufrimiento; incluye vacunación y cuidado preventivo. v. Acceso continuo a un área. Acceso continuo a un área es:

> a) Que el animal tenga el espacio adecuado para ejercicio necesario para su salud. Espacio inadecuado puede ser evidenciado por debilidad, estrés o patrones anormales de comportamiento.
> b) Temperatura apta para la salud del animal en atención a su hábitat natural. c) Ventilación adecuada.
> c) Ciclos de luz diurna regular, ya sea por luz natural o artificial.
> d) Un medioambiente limpio y libre de exceso de desecho u otros contaminantes que puedan afectar la salud del animal. (Art. 3 de la Ley Núm. 154-2008, *supra*, sec. 1600).

Acorde con lo anterior, "una persona se considerará negligente si dicha persona a sabiendas, descuidadamente o por negligencia falla en proveer cuidado mínimo a un animal en posesión de dicha persona. Art. 3(a) de la Ley Núm. 158-2008, *supra*.

**C.**

Para que una persona pueda ser castigada criminalmente, al momento de llevar a cabo el acto delictivo debe haber contado con un aviso adecuado sobre la conducta prohibida y la pena que conlleva. ***Pueblo v. Reyes Carillo***, 207 DPR 1056, 1064 (2021). Su propósito es limitar la facultad punitiva del Estado de modo que no sea ejercida arbitrariamente. Íd. El principio de legalidad es el conjunto de garantías dirigidas a cumplir con ese propósito y está basado en la máxima de que no hay delito, ni pena sin una ley previa. Íd.

Asimismo, el principio de legalidad no es solo una exigencia de seguridad jurídica que requiere la determinación previa por ley de delitos y penas, sino que, además, es la garantía política de que la persona no será sometida por el Estado, ni por los jueces a penas que no admita el pueblo. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, 7ma ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, Inc., 2015, pág. 69.

El principio de legalidad está consagrado en el Art. 2 del Código Penal de 2012, 33 LPRA sec. 5002, el cual dispone lo siguiente:

> No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido como delito en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos.
>
> No se podrán crear por analogía delitos, penas, ni medidas de seguridad.

De otra parte, "[l]a doctrina de vaguedad es un corolario del debido proceso de ley que prohíbe la aplicación contra una persona de una ley o un reglamento cuyos términos no revelen clara y adecuadamente cuál es la conducta prohibida". ***Pueblo v. APS Healthcare of P.R.***, 175 DPR 368, 377-378 (2009).

Una ley adolece de vaguedad si sus prohibiciones no están claramente definidas, es decir, si "una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir, lo que se presta para una aplicación arbitraria y discriminatoria**". *OCS v. Point Guard Ins.***, 205 DPR 1005, 1031 (2020).

Nuestro Tribunal Supremo ha precisado que una legislación adolece de vaguedad si: (1) una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir y penalizar; (2) se presta a la aplicación arbitraria y discriminatoria; e (3) interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución. ***Pueblo v. APS Healthcare of P.R.***, *supra*, a la pág. 378.

Ahora bien, "el hecho de que una disposición requiera interpretación no significa que es vaga, puesto que no debe caerse en la superficialidad de creer que una ley penal es nula por defecto de vaguedad debido a que requiera interpretación". ***Pueblo v. APS Healthcare of P.R.,*** *supra,* a la pág. 388.

En cuanto a la interpretación de los estatutos penales, el Art. 13 del Código Penal de 2012, *supra*, sec. 5013, establece la siguiente normativa:

> Si el lenguaje empleado en un estatuto es susceptible de dos o más interpretaciones, debe ser interpretado para adelantar los principios establecidos en este Código y la protección del bien tutelado en el artículo particular objeto de interpretación, pero siempre tomando como base el principio de responsabilidad penal.

La ley no puede estar redactada de tal forma, que un individuo de inteligencia común esté obligado a adivinar su significado o que pueda, razonablemente, diferir de su aplicación; ello violaría el debido proceso de ley. Art. II, Sec. 7, **Const. ELA**, LPRA, Tomo 1; ***Pueblo v. Hernández Colón***, 115 DPR 891 (1987).

Cónsono con lo anterior, en nuestro sistema jurídico los tribunales somos los llamados a interpretar las leyes. En el ejercicio de tal función, utilizamos los principios de hermenéutica judicial para interpretar los estatutos de acuerdo con la verdadera intención del legislador. ***Pueblo v. Zayas Rodríguez***, 147 DPR 530, (1999).

### D.

La figura de arresto de veredicto condenatorio proviene del derecho común. Véase, ***U.S. v. Sisson***, 399 U.S. 267 (1970). En ***Pueblo v. Rivera***, 46 DPR 113 (1934), el Tribunal Supremo expresó que la figura de arresto del veredicto llegó a Puerto Rico por vía del Art. 305 del derogado Código de Enjuiciamiento Criminal de 1902. Dicho Código tuvo como modelo el Código Penal del estado de California. El Alto Foro, refiriéndose a la jurisprudencia del estado de California, estableció que dicha moción es una "solicitud del acusado para que no se dicte sentencia en virtud de una declaración o veredicto de culpabilidad o de un veredicto contra el acusado sobre una alegación de convicción o absolución anterior". Íd., pág. 115. El arresto del fallo solo procede si se basa en una de las mismas razones por las cuales se otorgaría una

desestimación bajo la Regla 64 de Procedimiento Criminal. ***Pueblo v. Rivera Vázquez***, 177 DPR 868, 881 (2010); Cal. Penal Code sec. 1004; 34 LPRA Ap. II, R. 64.

El efecto de conceder una moción de arresto del veredicto condenatorio es colocar al acusado en la misma posición que se encontraba previo a la radicación de los cargos. Véase, Cal. Penal Code sec. 1186. Conviene mencionar que, la moción no puede basarse en insuficiencia de prueba, ni la corte puede resolverla teniendo en cuenta en dicha insuficiencia. ***Pueblo v. Rivera***, supra, pág. 122. El tribunal solo puede recurrir a la evidencia si el pliego acusatorio presenta defectos de su faz. Íd.

**IV.**

En el presente caso, la peticionaria nos solicita que revoquemos la determinación del foro primario que rechazó el arresto del fallo y, por ende, la desestimación de los cargos imputados en su contra, por violaciones al Art. 3(a) de la *Ley Núm. 158-2008*, *supra*, luego de haber sido convicta tras la celebración del juicio correspondiente. Alega que el precitado artículo es inconstitucional por vaguedad. Aduce que la definición de "cuidado mínimo" no es clara por lo que no permite a una persona razonable conocer con certeza cuál conducta que constituye delito.

Del otro lado, la parte recurrida arguye que cada una de las denuncias presentas en contra de la señora Erickson identifican a la peticionaria como la persona encargada de los animales, describen la condición específica que constituyó la falta de cuidado mínimo y precisan el animal concernido. Por lo que, argumenta que, todas las denuncias imputaban circunstancias suficientes para configurar el maltrato por negligencia.

En la determinación recurrida, el TPI realizó un pormenorizado análisis del contenido individual de cada una de las

denuncias. Lo anterior, para evaluar si existen circunstancias suficientes para configurar el elemento de falta de cuidado mínimo.

Tras un análisis objetivo, sereno y cuidadoso del expediente y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que procede expedir el auto de *Certiorari* y confirmar la *Resolución* recurrida.

Conforme al derecho precedentemente pormenorizado, en virtud del principio de legalidad, las leyes deben dar un aviso adecuado de las consecuencias penales de la conducta que ordenan o que prohíben. Empero, si una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir y penalizar, la ley adolece de vaguedad y se presta para su aplicación arbitraria y discriminatoria.

En el caso que nos ocupa, colegimos que el Art. 3(a) de la Ley Núm. 154-2008, *supra*, cumple con advertir la conducta prohibida, así como sus consecuencias penales. El mismo advierte que, una persona se considerará negligente si, a sabiendas, descuidadamente o por negligencia, falla en proveer a un animal en su posesión el cuidado mínimo, según definido por el mismo estatuto. En el Art. 2 de la precitada Ley, la definición de "cuidado mínimo" proscribe que el cuidado exigido será aquel suficiente para preservar la salud y bienestar de un animal, exceptuando emergencias o circunstancias excepcionales y establece una lista, no taxativa, de los requerimientos mínimos de cuidado.

La falta de limpieza y espacio en las jaulas, la falta de comida o comida en buen estado, falta de limpieza en las cajas de arena, la presencia de telarañas y gusanos en las jaulas, falta de higiene en los animales, orina y excremento acumulados en las jaulas claramente tipifica los elementos del delito.

En un análisis adecuado de los precitados artículos, nos resulta forzoso concluir que, una persona de inteligencia ordinaria

debe poder entender razonablemente cuál es la conducta prohibida. Por lo que, resolvemos que, el Art. 3(a) de la Ley Núm. 154-2008, *supra*, cumple con el principio de legalidad y, no sufre de vaguedad. Por lo tanto, el foro primario no erró al rechazar el arresto del fallo condenatorio y denegar la solicitud de desestimación de las acusaciones. Por el contrario, actuó correctamente en derecho. Por consiguiente, expedimos el auto de *certiorari* y confirmamos la *Resolución* recurrida.

**V.**

Por los fundamentos pormenorizados, se expide el auto de *certiorari* y se confirma la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones